JWC / 330067                                                    8218-1-642-433

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DEWAYNE EGLY,                              )
                                          )
      Plaintiff,                       )
                                          )
v.                                        )       Case No. 08 CV 2243
                                          )
TDF CORPORATION, an Illinois corporation, )       Judge Joan B. Gottschall
                                          )
      Defendant.                       )

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT TDF CORPORATION'S MOTION TO DISMISS OR TRANSFER VENUE

Plaintiff, DeWayne Egly (hereinafter "Egly") by and through his attorneys, Tressler, Soderstrom, Maloney & Priess, LLP, submits this memorandum of law in opposition to Defendant TDF Corporation's (hereinafter "TDF") Motion to Dismiss or Transfer Venue. As will be detailed herein, TDF has failed to meet its burden of clearly establishing that the Central District of Illinois is a more convenient forum than the Northern District of Illinois to resolve the instant contract dispute. In addition to the fact that Egly, as the plaintiff, chose to bring the dispute at issue to this court, and his choice of forum is a paramount consideration in the determination of a venue transfer request, neither the convenience of parties and witnesses nor the interest of justice support the transfer of this action. Accordingly, TDF's motion to dismiss or transfer venue pursuant to 28 U.S.C. §1404(a) must be denied.

I.     **VENUE IS PROPER IN THE NORTHERN DISTRICT ILLINOIS BECAUSE TDF DOES BUSINESS IN THE NORTHERN DISTRICT OF ILLINOIS.**

Venue is proper when selected in accordance with the provisions of 28 U.S.C § 1391. If the defendant is a corporation, 28 U.S.C. §1391(c) states in relevant part that:

> For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State,

Under 28 U.S.C. §1391(c), a corporation resides in those judicial districts in which it is incorporated, licensed to do business or is doing business. Egly filed this action in the Northern District and asserts in the Complaint that venue is proper in the Northern District because TDF does business in this district; specifically that TDF does business in Chicago through a wholly owned subsidiary, and that an officer of TDF maintains an office in Naperville, Illinois.

Despite TDF's assertions to the contrary, TDF "does business" in the Northern District, as demonstrated by the documentation attached as Exhibits A through G. The documents in Exhibits A and B indicate that by and through Claudia F. Fabela, TDF's founder and Chief Financial Officer, TDF maintains an office in Naperville, Illinois. Additionally, Exhibits C and D provide examples of instances where TDF is identified as a "Naperville firm", or is listed as having a Naperville address. Included as Exhibits E and F are the Illinois Secretary of State's Corporation File Detail Reports for the sister companies of TDF: Logistics Transformation Group, LLC and Simplicity Squared, LLC, respectively. These reports indicate that Logistics Transformation Group and Simplicity Squared maintain offices in the Northern District of Illinois. Finally, attached as Exhibit G is documentation that Avolux Media, a wholly owned subsidiary of TDF offers services in the Chicagoland area. As these documents demonstrate, TDF "does business" in the Northern District of Illinois. In accordance with 28 U.S.C. §1391(c), venue is therefore proper in the Northern District. Accordingly, TDF's Motion to Dismiss or Transfer this matter under 28 U.S.C. 1406(a) for improper venue should be denied.

## II. THE BURDEN IS ON TDF TO ESTABLISH THAT THE BALANCE OF PUBLIC AND PRIVATE INTEREST FACTORS STRONGLY FAVOR THE TRANSFER OF VENUE.

28 U.S.C. 1404(a) provides, in relevant part, that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

In order to be successful on a motion to transfer venue, a defendant must show that venue is proper in the transferee district; that the transferee district is more convenient for the parties and the witnesses; and that the transfer would serve the interests of justice. See *Graham v. United Parcel Service*, 519 F.Supp.2d 801 (N.D.Ill. 2007), *Bryant v. ITT Corp.*, 48 F.Supp.2d 829 (N.D.Ill. 1999), *Vandeveld v. Christoph*, 877 F.Supp. 1160 (N.D.Ill. 1995).

In determining whether the transferee venue is more convenient and whether the transfer of venue would be in the interest of justice, the courts have considered the private interests of the parties as well as the public interests of the court. See *Graham v. United Parcel Service*, 519 F.Supp.2d 801 (N.D.Ill. 2007), and *N. Shore Gas Co. v. Salomon, Inc.*, 896 F.Supp. 786 (N.D.Ill. 1995). The burden is on TDF to demonstrate that the balance of the factors weighs heavily in favor of transfer and that transfer would not merely shift inconvenience from one party to another. See *Graham v. United Parcel Service*, 519 F.Supp.2d 801 (N.D.Ill. 2007), and *Fink v. Declassis*, 738 F.Supp. 1195 (N.D.Ill.1990).

### A. TDF HAS FAILED TO ESTABLISH THAT THE FACTORS RELEVANT TO THE PARTIES' PRIVATE INTERESTS WEIGH HEAVILY IN FAVOR OF TRANSFER.

The factors relevant to the parties' private interests include: the plaintiff's choice of forum; the convenience of the parties; and the convenience of the witnesses. See *Graham v. United Parcel Service*, 519 F.Supp.2d 801 (N.D.Ill. 2007), *Vandeveld v. Christoph*, 877 F.Supp. 1160 (N.D.Ill. 1995), and *Coll. Craft Cos., Ltd. v. Perry*, 889 F.Supp. 1052 (N.D.Ill.1995).

### (1)    PLAINTIFF'S CHOICE OF FORUM TO BE GIVEN SUBSTANTIAL WEIGHT

Egly, as the plaintiff, chose the United States District Court for the Northern District of Illinois as its choice of forum to resolve the instant contract dispute. The federal courts in Illinois have given the plaintiff's choice of forum substantial weight under 28 U.S.C. 1404(a), holding that plaintiff's choice of forum should rarely be disturbed unless the balance is strongly in favor of defendant. *Peterson v. U.S. Steel Corp;*, 624 F.Supp. 44 (N.D.Ill. 1985), *Hess v. Gray,* 85 F.R.D. 15, 24 (N.D.Ill.1979); *Lemke v. St. Margaret Hospital,* 552 F.Supp. 833, 839 (N.D.Ill.1982). Accordingly, Egly's decision to bring this case in the Northern District of Illinois, a proper venue, should not be undone unless TDF can show a compelling reason for doing so.

### (2)    THE CONVENIENCE OF THE PARTIES

TDF, as movant, has the burden of showing that the transferee forum is clearly more convenient. *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286 (C.A.7 (Ill.), 1989), *Coffey v. Van Dorn Iron Works*, 796 F.2d 217 (7th Cir. 1986). In support of its position that the Central District of Illinois would be more convenient to the parties, TDF simply claims that the Central District of Illinois would be significantly more convenient to TDF and its management as its office is located in the Central District of Illinois, as is the documentary evidence that relates to this litigation. (Motion ¶19). In its Motion, TDF downplays the inconvenience to Plaintiff of an action in the Central District by stating only that any inconvenience to the Plaintiff of an action in the Central District of Illinois would be minimal as the Plaintiff resides in Lake Geneva, Wisconsin, and not in the Northern District. (Motion ¶18). However, the distance between Lake Geneva, Wisconsin and Chicago, Illinois (79.4 miles) is

considerably less than the distance between Lake Geneva, Wisconsin and the Quad Cities (182 miles). Accordingly, TDF has failed to establish that the Central District would be clearly more convenient to the parties.

Illinois courts have held that "When the plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience; and when the inconvenience of the alternative venues is comparable, there is no basis for a change in venue; the tie is awarded to the plaintiff" *In re National Presto Industries, Inc.*, 347 F.3d 662, 665 (C.A. 7 (Ill.), 2003). Furthermore, Illinois courts have held that "transfer is not appropriate where it would merely shift inconvenience from one party to another." *Graham v. United Parcel Service*, 519 F.Supp.2d 801, 810 (N.D.Ill. 2007).

### (3)   THE CONVENIENCE OF THE WITNESSES

When Illinois courts assess the convenience of potential witnesses, they must look beyond the number of witnesses and examine the nature and quality of the witnesses' testimony with respect to the issues in the case. *Graham v. United Parcel Service*, 519 F.Supp.2d 801 (N.D.Ill. 2007), citing *Vandeveld v. Christoph*, 877 F.Supp. 1160 (N.D.Ill. 1995). Illinois courts have held that the party seeking transfer must clearly specify key witnesses to be called and make a general statement as to their testimony. *Graham v. United Parcel Service*, 519 F.Supp.2d 801 (N.D.Ill. 2007).

In *Graham*, the defendant movant identified several witnesses but it did not specifically identify any non-party witness, nor did it provide any evidence that any witnesses would be necessary or provide explanation as to what the substance of any of the witnesses' testimony

would be. The *Graham* court held that this was insufficient to meet the defendant movant's burden of establishing that the transferee venue would be more convenient.

Like the defendant movant in *Graham*, TDF has failed to identify any witnesses, provide evidence as to why the witnesses are necessary, or provide an explanation as to what the substance of any of the witnesses' testimony would be. Accordingly, under the reasoning of *Graham*, TDF has failed to meet the burden of establishing that the Central District of Illinois is clearly more convenient[1].

At trial, Egly intends to call, as his principal witness, Augie K. Fabela, Sr., the Chief Executive Officer of TDF. Given that Mr. Fabela does not reside in the Central District of Illinois, but rather maintains several residences in cities throughout the United States, including Lake Geneva, Wisconsin, Naples, Florida and Las Vegas, Nevada, (Affidavit of Dewayne Egly ¶11), the convenience to Mr. Fabela of the alternate venues is comparable. Therefore transference of this matter the Central District of Illinois based on the convenience of the witnesses would not be appropriate.

## B. TDF HAS FAILED TO ESTABLISH THAT THE FACTORS RELEVANT TO THE PUBLIC INTEREST OF THE COURT WEIGH HEAVILY IN FAVOR OF TRANSFER.

The factors relevant to the public interest of the court include the court's familiarity with the applicable law and concerns relating to the efficient administration of justice. See *Graham v. United Parcel Service*, 519 F.Supp.2d 801 (N.D.Ill. 2007), citing *Coll. Craft Cos., Ltd. v. Perry*, 889 F.Supp. 1052, 1056 (N.D.Ill.1995).

---

[1] Additionally, two of the three individuals identified in TDF's Rule 26(a)(1) Disclosures as persons believed likely to have knowledge of relevant, discoverable information, do not reside in the Central District of Illinois.

Plaintiff Egly filed this action in the Northern District of Illinois in order to obtain a

judgment as to whether a valid and binding contract exists between Egly and TDF; and whether

TDF breached this contract with Egly by seeking to improperly terminate his employment. The

contract entered into by Egly and TDF, entitled "Employment Agreement", is attached hereto as

Exhibit H.  Paragraph 12 of the contract provides in relevant part that:

> (e) Choice of Law.  All questions concerning the construction, validity, and
> interpretation of this Agreement and any exhibits hereto will be governed by the
> internal law, and not the law of conflicts, of the State of Illinois.

Therefore, as both this district and the transferee district are within Illinois, the familiarity of

either court with the applicable law does not carry weight with respect to the issue of transfer as

both courts are equally familiar with Illinois law.

Wherefore, the Plaintiff Egly, for the reasons stated above, requests that this Court deny

TDF's Motion to Dismiss or Transfer Venue to the Central District of Illinois.


DEWAYNE EGLY


By:  /s/  John W. Carver
          One of His Attorneys


John W. Carver
Tressler, Soderstrom, Maloney & Priess, LLP
Sears Tower 22nd Floor
233 S. Wacker Drive
Chicago, Illinois 60606
Tel.: (312) 627 – 4000

MK / 329996

8218-1-642-433

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DEWAYNE EGLY,                               )
                                            )
        Plaintiff,                  )
                                            )
v.                                          )    Case No. 08 CV 2243
                                            )
TDF CORPORATION, an Illinois corporation,   )    Judge Joan B. Gottschall
                                            )
        Defendant.                  )

### AFFIDAVIT OF PLAINTIFF DEWAYNE EGLY

I, Dewayne Egly, under penalties of perjury, state as follows:

1.  My principal place of residence is Lake Geneva, Wisconsin.

2.  The negotiations for the Employment Agreement entered into by TDF Corporation and me took place while I was in Lake Geneva, Wisconsin.

3.  The Employment Agreement was first executed by me in Lake Geneva, Wisconsin.

4.  I performed my obligations under the Agreement from both Rock Island, Illinois and Lake Geneva, Wisconsin.

5.  Documents relating to the Employment Agreement, and the letter signed by Augie K. Fabela, Sr., purporting to terminate my employment with TDF are located in Lake Geneva, Wisconsin.

6.  The documents attached as Exhibits A through G to the Memorandum in Opposition to Defendant TDF Corporation's Motion to Dismiss or Transfer Venue contain information that I discovered while researching the subject entities.

7.  As shown in Exhibit A, as documented in the Illinois Secretary of State's Corporation File Detail Report, TDF Corporation, by and through Claudia F. Fabela, President and Chief Financial Officer, maintains an office in Naperville, Illinois.

8.  As shown in Exhibit E, Logistics Transformation Group, LLC, is a sister company of TDF Corporation. As documented on the Illinois Secretary of State's Corporation File Detail Report, Logistics Transformation Group, LLC maintains an office in Chicago, Illinois.

1

9.    As shown in Exhibit F, Simplicity Squared, LLC, is a sister company of TDF Corporation. As documented on the Illinois Secretary of State's Corporation File Detail Report, Simplicity Squared, LLC maintains an office in Naperville, Illinois.

10.    As shown in Exhibit G, Avolux Media, Inc., a wholly owned subsidiary of TDF Corporation offers services in the Chicagoland area.

11.    At trial, I intend to call as my principal witness Augie K. Fabela, Sr., Chief Executive Officer of TDF Corporation. Upon information and belief, Mr. Fabela maintains residences in the following locations: Lake Geneva, Wisconsin; Naples, Florida; and Las Vegas, Nevada. Mr. Fabela does not maintain a residence in Rock Island, Illinois. When Mr. Fabela is in Illinois conducting work at the TDF Corporation offices in Rock Island, he maintains a hotel room in the area.

Dewayne Eck

Subscribed and sworn to before me
this 16th day of July, 2008.

Phyllis M. Michener
Notary Public

"OFFICIAL SEAL"
Phyllis M Michener
Notary Public, State of Illinois
Commission Expires 5/14/2011

2

## Certificate of Service

I hereby certify that on July 16, 2008, I electronically filed Plaintiff's Memorandum of Law in Opposition to Defendant TDF Corporation's Motion to Dismiss or Transfer Venue with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the below-listed attorneys through the Court's electronic filing system.

Matthew P. Pappas, Esq.
Pappas & Schnell, P.C.
1617 Second Avenue, Suite 300
Rock Island, Illinois 61201

Elizabeth Hubbard
John C. O'Connor
Brian D. Ekstrom
Hubbard & O'Connor
900 West Jackson, Suite 6W
Chicago, Illinois 60607

/s/    John W. Carver



SERVICES    PROGRAMS    PRESS    PUBLICATIONS    DEPARTMENTS    CONTACT

## CORPORATION FILE DETAIL REPORT

| Entity Name | TDF CORPORATION | File Number | 55483795 |
|---|---|---|---|
| Status | GOODSTANDING | | |
| Entity Type | CORPORATION | Type of Corp | DOMESTIC BCA |
| Incorporation Date (Domestic) | 04/13/1989 | State | ILLINOIS |
| Agent Name | CLAUDIA F FABELA | Agent Change Date | 07/08/2003 |
| Agent Street Address | 1119 TUSCANY LN | President Name & Address | GEORGE SHREVES PO BOX 5164 ROCK ISLAND 61204 |
| Agent City | NAPERVILLE | Secretary Name & Address | JANET MICHEEL 5119 WHITE OAK SMITHTON 62285 |
| Agent Zip | 60564 | Duration Date | PERPETUAL |
| Annual Report Filing Date | 04/03/2008 | For Year | 2008 |
| Old Corp Name | 04/26/1989 - TDF, INC. | | |

**Return to the Search Screen**          **Purchase Certificate of Good Standing**

(One Certificate per Transaction)

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

Login | Join | Person Directory | Company Directory



| people | companies | jobs |

e.g., Frank Vaculin      [Search]

## Claudia Fabela's Professional Profile



### Claudia Fabela   This
is me

**President**
Tdf Corp
750 East Diehl Road 127
Naperville, IL 60563-2384
http://www.tdfcorporation.com

✉ **Send E-mail**

**Get More Info**

Has this info changed?
Claim your page.

Ms. Claudia F. Fabela, President/Chief Financial Officer Ms. Fabela has a BA in psychology from Northwestern University and a MBA from University of Michigan. In addition to her role at TDF, Ms. Fabela also serves on the Board of Directors for Dimension Solutions and Scopus Corporation. She is also treasurer of the American Defense Preparedness As...
See Claudia Fabela's full bio.

**Tags:** Tdf Corp - IL - Computer related service - President

### Claudia Fabela's Job History                    See full job history

Tdf Corporation
2006—2008

### Claudia Fabela's Colleagues

#### 9 contacts at Tdf Corp

Kathy Kresin
Vice President

Claudia F. Fabela
President

George Shreves
Click to join Spoke and see George Shreves's information

**Page Statistics**

Page views: **23**

★ ★ ★ ⯪
(click

➕ BOOKMAR

**Comments Abou**

Post C

* Spoke is not responsibl
member-contributed comi

**Job Postings**

Tdf Cor
like Pre
in Naperville, 1

Vice President of Busin
Itasca, IL

Vice President of Custo
Downers Grove, IL - Ac

CAMPUS PRESIDENT
Glendale Heights, IL - l
Institute

Vice President of Vendo
Wood Dale, IL

Vice President Supply C
Bloomingdale, IL - Insi

See All Jobs

keywords          loca

**Galilea Montijo**
Looking for Galilea Montijo? Find
Galilea Montijo on eBay!
search.ebay.com

**Chicas Mexicanas**
Imagenes Magnificas y Sexy de
las Chicas mas Bellas de Mexico!
Gratis
www.ChicasMexicanasPix.com

**Adelgaze Su Estomago**
El Secreto Para Bajar De Peso
Rapido Que Usted Estaba
Esperando..
www.PierdeDePesoRapido.com

**Conocer Mujeres Gr**
Chat con mujeres, chi
hermosas y latinas lin
Chat Gratis
EncuentraSolteras.cor

Anu

V V

Version 8.8.0.B8.36788 © copyright 2002 — 2008 Spoke Software          privacy policy | help & trainin

Spoke provides online business-to-business contact information designed specifically to help individuals and organizations find people at their target accounts. Spoke's business directory and detailed contact information allows users to identify prospects, conduct company research and access the right people at all levels of an organization. Information on over 40 million people across more than updated to 2.3 million companies gives marketers, sales people and recruiters the contact information they need to penetrate target accounts, including business email address, postal address, phone number, title, and job history. Spoke puts you in control of lead generation and sales prospecting by allowing you to search our extensive database and generate business lists like never before.

Industrial Directory

Login | Join | Person Directory | Company Directory



people    companies    jobs

e.g., Frank Vaculin

Search

## Tdf Corp Company Profile



### Tdf Corp

750 East Diehl Road 127
Naperville, IL 60563-2384
http://www.tdfcorporation.com

**Industry:** Computer related
service
**Revenue:** $25M - $50M in
sales
**Employees:** 100 - 250
employees
**Companies like Tdf Corp:**
Tech Mahindra
(Americas) Inc. - The
Sutherland Group Ltd.

✉ **Send E-mail**

**Get More Info**

Has this info changed?

### Page Statistics

Page views: **13**

★ ★ ★ ★

(click

⊕ BOOKMAR

### Comments Abou

Post C

* Spoke is not responsible
member-contributed comm

**Summary:** research and testing services

**Tags:** IL - Computer related service

### People at Tdf Corp

find more...

**9 contacts at Tdf Corp**

Kathy Kresin
Vice President

Claudia F. Fabela
President

Claudia Fabela
President

### Other Known Titles at Tdf Corp

find more...

Vice President

### Job Postings

Tdf Co
in Naperville, 1

keywords    loca

Jobs by **SimplyHired**

## Meet Local Cyclists
View Photo Profiles. Local Singles into Cycling. Join Now for Free. www.Fitness-Singles.com

www.Fitness-Singles.com

Feedbac

Version 8.8.0.B8.36788 © copyright 2002 — 2008 Spoke Software

privacy policy | help & trainin

Spoke provides online business-to-business contact information designed specifically to help individuals and organizations find people at their target accounts. Spoke's business directory and detailed contact information allows users to identify prospects, conduct company research and access the right people at all levels of an organization. Information on over 40 million people across more than updated to 2.3 million companies gives marketers, sales people and recruiters the contact information they need to penetrate target accounts, including business email address, postal address, phone number, title, and job history. Spoke puts you in control of lead generation and sales prospecting by allowing you to search our extensive database and generate business lists like never before.

Industrial Directory



**AztecaNet™**

"Making our Mark on the Internet"

## Press Releases

# More Latinos follow tech dream

**By Agustina Guerrero**
Tribune staff reporter
Published September 24, 2001

Caroline Sanchez Crozier came to the United States in 1967 and became the first in her family to earn a college degree.

She also runs one of the area's oldest Latino-owned technology companies, having founded Chicago-based CS&C Inc. in 1988. The firm specializes in instructional technology and has averaged $3 million in sales for the last 10 years.

For Sanchez Crozier, it has been "the American dream come true," but for many Latinos trying to start a technology company, visions of success are still just a dream.

Mario Araujo knows how hard it can be to start a company. He launched AztecaNet, an Internet service provider, five years ago in Los Angeles. The service is now offered in other major cities, including Chicago, and has $1 million in revenue.

"It is very hard for Latinos because we don't have a lot of capital, and it is hard to get money from banks," Araujo said. "The way we do business is very conservative. We operate on a cash basis, we grow very slowly."

Another problem: Araujo's cash model is not very attractive to venture capital firms looking to invest in a minority-owned company.

While Araujo's firm is still growing, many Hispanic information technology companies have failed before taking off, said Jesse Ruiz, a corporate lawyer with Gardner Carton and Douglas, based in Chicago.

"Latino entrepreneurs have more difficult times in convincing [venture capital] firms because [venture capitalists] trust the people they know. So chances are that people who play golf with investors get the money. It is difficult for Hispanics to get the seed capital to get off the ground," he said.

Also, local Latino companies face the same fate as many start-up Chicago tech firms when it comes to funding.

"There is more capital available on the coasts than here in the Midwest,"

said Marty Castro, a lawyer at Chicago's Castro, Gomez, Durbin and De Jesus LLC. "We need government leadership to change this.

" The U.S. Hispanic Chamber of Commerce is trying to help. The chamber has created a fund to provide venture capital and equity to Latino companies.

The fund has already received a commitment from Verizon Communications and Bank One, and is expected to raise upwards of $100 million by the end of this year, said George Herrera, president and chief executive of the chamber.

"It's a fund for emerging companies with at least three years in business," he said. "We will focus on companies related to telecommunications, information technology, media, education and hospitality services."

For Fernando Leal, founder of Chicago-based WynWyn, it wasn't so hard to get money.

"If you have a good plan and you are perseverant you will get the capital," he said. "Over the last four years I raised $20 million for my company, based on business fundamentals and perseverance.

" WynWyn sells databases with local commerce information, and has received money from investors including New York-based Wheatley Partners, BlueVector and EarlyBirdCapital.

Nevertheless, a recent study by the Tomas Rivera Policy Institute, in Claremont, Calif., concluded that many Latino businesses are undercapitalized.

"The lack of capital is not only in the financial side but in the human resources side as well," said Waldo Lopez, the institute's director of economic policy research. Compared with the general population, "Latino-owned companies have the lowest amount of capital to start," and their personnel have completed the least amount of schooling, according to the study.

There are about 35 million Latinos in the United States. The 500 biggest Hispanic companies in the nation generated $21.18 billion in revenue in 2000 compared with $10 billion in 1991, based on data provided by Hispanic Business magazine.

Juan Soto, founder of Chicago-based PC Experts, thinks there could be more Latino IT companies in the Chicago area if more Hispanics had the right technology education. "You need computing communications skills to start a business like this," he said.

He started his own company in 1994 in response to an expanding demand for computer software development and integration.

Like Soto, AztecaNet's Araujo said education is a critical problem. When

he graduated from San Diego State University with a computer science degree 20 years ago, he was the only Latino. That's why he thinks it is hard to find Hispanic professionals starting tech firms.

But the chamber's Herrera has a different view. For him, the Hispanic community is already well-prepared and represented in the IT arena.

"Our entrepreneurs have the managerial, financial and technical skills. There are a lot of major IT companies owned by Hispanics nationwide. Some Hispanic IT companies are already generating $2 billion or $3 billion a year. But a lot of them are secret, they are not known countrywide," he said.

One of them is TDF Corp., a Naperville firm that offers a wide range of IT solutions to U.S. government agencies, including the Army. Founded in 1989, TDF now employs more than 100 tech professionals.

"There is tremendous competition in this area, but we found our niche in the federal government. They have quotas for minorities and we are 100 percent Latino-owned," said Claudia Fabela, TDF's president and founder.

Other Latino entrepreneurs say Hispanics will not be well-represented in the IT field until the Latino business community can work together like other minority groups.

African-Americans, for instance, have leaders like Jesse Jackson, said Bennett Santana, founder of Business Systems of America, a Chicago company specializing in IT staffing. "He can pick up the phone and get an appointment with the president," Santana said. "There is no one that can do that for Hispanics. We lack a central figure or organization to unite us."

The dearth of Latinos pursuing technology as a career leads to fewer IT professionals, resulting in few entrepreneurs, said Sanchez Crozier.

She has sought a Latino IT professionals organization locally that can connect to a national base, but she has yet to identify one in Chicago. She has considered forming a group, but her time is limited.

"We need one organization that can eventually reach the caliber of the Black Data Processing Association," she said.

That association provides professional development programs and services to members. Founded in 1975 in Philadelphia, it now has more than 40 active chapters across the United States and 2,500 members, including students, educators, vendor representatives, entrepreneurs and information technology professionals.

One organization aimed at helping Latino entrepreneurs raise capital is the Latino Initiatives for the Next Century. The Chicago-based non-profit organization provides economic assistance and equity to Latinos throughout the United States. It has recently launched a fund called

Millennium LMI LP to make equity investments in minority companies.

Copyright ? 2001, Chicago Tribune

<= BACK



SERVICES     PROGRAMS     PRESS     PUBLICATIONS     DEPARTMENTS     CONTACT

## LLC FILE DETAIL REPORT

| Entity Name | LOGISTICS TRANSFORMATION GROUP, LLC | File Number | 01846434 |
|---|---|---|---|
| Status | GOODSTANDING | On | 04/30/2008 |
| Entity Type | LLC | Type of LLC | Domestic |
| File Date | 05/03/2006 | Jurisdiction | IL |
| Agent Name | ROBERT A. MCWILLIAMS | Agent Change Date | 05/03/2006 |
| Agent Street Address | 311 S WACKER DR STE 3000 | Principal Office | ROCK ISLAND ARSENAL BLDG 131 ROCK ISLAND 61204 |
| Agent City | CHICAGO | Management Type | MBR |
| Agent Zip | 60606 | Dissolution Date | PERPETUAL |
| Annual Report Filing Date | 04/30/2008 | For Year | 2008 |
| Series Name | NOT AUTHORIZED TO ESTABLISH SERIES | | |

**Return to the Search Screen**        Purchase Certificate of Good Standing

(One Certificate per Transaction)

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE



SERVICES        PROGRAMS        PRESS        PUBLICATIONS        DEPARTMENTS        CONTACT

## LLC FILE DETAIL REPORT

| | | | |
|---|---|---|---|
| Entity Name | SIMPLICITY SQUARED, L.L.C. | File Number | 01602659 |
| Status | GOODSTANDING | On | 07/11/2007 |
| Entity Type | LLC | Type of LLC | Domestic |
| File Date | 08/23/2005 | Jurisdiction | IL |
| Agent Name | RICHARD W KUHN | Agent Change Date | 08/23/2005 |
| Agent Street Address | 552 S WASHINGTON ST STE 100 | Principal Office | ROCK ISLAND ARSENAL BLDG 131 ROCK ISLAND 61299 |
| Agent City | NAPERVILLE | Management Type | MGR |
| Agent Zip | 60540 | Dissolution Date | PERPETUAL |
| Annual Report Filing Date | 00/00/0000 | For Year | 2008 |
| Series Name | NOT AUTHORIZED TO ESTABLISH SERIES | | |

Return to the Search Screen                    Purchase Certificate of Good Standing

(One Certificate per Transaction)

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

Sign in | Register | Member Search

search for vendors

- home
- photos
- vendor reviews
- my wedding
- forums
- what's new
- invite friends

# Avolux Media

▢▢▢▢▢ 0 reviews (?)

**Categories**: videographer **Area Served**: chicago
**Address** (map)
Moline, IL

**Contact**
(309) 757-9011
Visit website

*Please support us by letting Avolux Media know that you found them through Project Wedding.*
Are you this vendor?                                                         upload photos

No photos for this wedding vendor.

**Garden Weddings**
Wall to Wall Windows Overlooking Lush Gardens. Onsite Weddings
silverlakecc.com

**NJ Wedding Receptions**
Make Your Wedding Day Special Experience Meadow Wood &
Fairwinds
www.banquethallsnj.com

**The Best Wedding Venues**
Find the perfect wedding venues, reception venues & ceremony
venues.
WeddingWire.com/WeddingVenues

**Weddings And Wine**
Have your wedding at a Missouri winery. Get info here.
www.NortonSays.com

V V                          Ads by Google

## Wedding Dance Lessons

Group and Private Instruction Look Relaxed and Be Impressive

www.bigcityswing.com

Ads by Google

write a review            save to my vendors link to these reviews

# Reviews for Avolux Media

There are no reviews for this wedding vendor yet. Why not be the first to write a review?
about project wedding | feedback | advertising | for wedding vendors | contact us | privacy policy | terms
of service | link to us | sites we love
wedding vendor listings: sf bay area | los angeles + oc | new york + jersey | chicago | seattle | boston |
nationwide

## Project Wedding

© 2006-2007 WebShaka, Inc.

Loading

## EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT is made as of August 15, 2007 (this "Agreement"), between TDF Corporation, an Illinois corporation ("Employer"), and DeWayne Egly ("Employee").

### AGREEMENT

In consideration of the premises and the mutual covenants contained herein, the parties agree as follows:

1.      Employment; Term.  Employer shall employ Employee and Employee accepts employment with the Employer for the period beginning on the date hereof and ending on December 31, 2010 (the "Employment Period").

2.      Position and Duties.  Employee's title shall be President and he shall perform the normal duties of such office.  He shall report to the Chief Executive Officer of Employer. Throughout the Employment Period, Employee shall devote, on a full-time basis, his best efforts and business time and attention to the business and affairs of Employer. Employee shall perform his duties and responsibilities in a diligent, trustworthy, businesslike and efficient manner.

3.      Salary and Benefits.  Employee shall be paid an annual salary ("Salary") of $200,000 payable in regular installments, and subject to normal withholdings, in accordance with Employer's general payroll practices.

*Bonus*. Employee shall be entitled to a bonus based upon "Adjusted EBITDA" performance of Employer in each of 2008, 2009 and 2010 ("Bonus"). For purposes hereof, Adjusted EBITDA shall mean Employer's annual net income before, interest, taxes, depreciation and amortization, with adjustment for compensation paid to owners.  Adjusted EBITDA shall be determined in accordance with GAAP and consistent with Employer's past practice.  The Bonus, if earned, shall be paid within 30 days of the delivery of the audited financial statements of Employer, as prepared by Employer's independent accountants.  The Bonus shall be calculated on the following parameters:

| Year | EBITDA RANGE | % of SALARY |
|------|--------------|-------------|
| 2007 | Base:$1,250,000 | NA |
| 2008 | Up to $2,250,000 | Up to 75% |
| 2009 | Up to $3,500,000 | Up to 100% |
| 2010 | Up to $4,750,000 | Up to 125% |

If in any given year the EBITDA Range is exceeded, Employee shall be entitled to the full Bonus amount.  For EBITDA results achieved that are above the prior year's EBITDA Range but within the current year's EBITDA Range, the Bonus amount (i.e., % of salary) shall be reduced proportionately.

1384555v3

*Business Expenses.* Employer shall reimburse Employee for all reasonable expenses incurred by him in the course of performing his duties under this Agreement which are consistent with the Employer's policies in effect from time to time with respect to travel, entertainment and other business expenses, subject to the Employer's requirements with respect to reporting and documentation of such expenses.

*Relocation Expenses.* Employer will pay Employee $10,000 to be used, at Employee's discretion, for relocation purposes. Such expenses may include, for example, moving expenses, hotel stays, meals, gas and other related travel expenses. If Employee terminates his employment with Employer prior to the end of the Employment Period, Employee shall reimburse Employer for the full amount of the relocation expenses paid by Employer.

*Benefits.* Employee shall be entitled to participate in all of Employer's employee benefits programs in effect from time-to-time for which senior executive employees of Employer are generally eligible, and such other benefits generally available to employees of Employer, including accrued leave and holiday pay, medical insurance and participation in Employer's 401K retirement program.

Employee's rights to any compensation and benefits described in this Paragraph 3 shall cease upon termination of the Employment Period except for such as may be required by applicable federal or state laws.

4.    Employment Period. The Employment Period shall end on December 31, 2010; provided that the Employment Period may be terminated sooner as follows:

(a)    by Employer, at any time upon a determination of Employee's unethical, illegal, or irresponsible acts, conduct by Employee likely to bring the Employer or any of its Affiliates into public disgrace or disrepute or which could reasonably subject the Employer or any of such entities to legal action, including but not limited to sexual or other illegal harassment, or Employee's repeated failure to perform duties reasonably directed by the Board or a material breach of Employee's duty of loyalty to the Employer, or any act of dishonesty or fraud with respect to the Employer;

(b)    by Employer on 30 days' notice if, during the Employment Period, Employer's Adjusted EBITDA does not grow at least 20% per year, as determined on June 30 of each calendar year during the Employment Period. For purposes hereof, the base annualized Adjusted EBITDA as of June 30, 2007 is $1,225,882.60 (i.e., actual six-months results multiplied by 2)..

(c)    by Employer on 30 days' notice if Employer's annualized, Adjusted EBITDA for any two consecutive calendar quarters drops below the Adjusted EBITDA for the prior completed calendar year. Employer must exercise such termination right within 30 day's following the end of the relevant fiscal quarter;

(d)     by Employee for any reason upon providing notice to the Employer.

5.     Change-of-Control . If, prior to the end of the Employment Period, Employer is sold (in a sale of substantially all of its assets or a sale of at least 80% of Employer's outstanding capital stock) to a Person other than an Affiliate of Employer, then Employee shall be paid (i) his Salary through December 31, 2010 in accordance with Paragraph 3, and (ii) an amount equal to 3.0% of the cash consideration paid at Closing for the assets or shares of capital stock of Employer.

6.     Confidential Information.  The Employee acknowledges that the information, customer lists, employment rosters, observations and other data obtained by him while employed by Employer concerning the business or affairs of the Employer, or any Affiliate of Employer ("Confidential Information") are the property of the Employer or such Affiliate.  Therefore, Employee agrees that he shall not disclose to any unauthorized person or use for his own account any Confidential Information without the prior written consent of the Board, unless and to the extent that the aforementioned matters become generally known to and available for use by the public other than as a result of Employee's acts or omissions to act.  Employee shall deliver to Employer at the termination of the Employment Period, or at any other time Employer may request, all memoranda, notes, plans, records, reports, computer tapes and software and other documents and data (and Employee shall not keep any copies thereof) relating to the Confidential Information, Work Product (as defined below) or the business of the Employer or any Affiliate which he may then possess or have under his control.

7.     Inventions and Patents; Power of Attorney.  Employee agrees that all inventions, innovations, improvements, developments, methods, designs, analyses, drawings, reports, and all similar or related information which reasonably relates to the Employer's or any of its Affiliates' actual or anticipated business, research and development or existing or future products or services and which are conceived, developed or made by Employee while employed by the Employer or its Affiliates ("Work Product") belong to the Employer or its Affiliate.  Employee will promptly disclose such Work Product to the Board and perform all actions reasonably requested by the Board (whether during or after the Employment Period) to establish and confirm such ownership (including, without limitation, assignments, consents, powers of attorney and other instruments). Employee hereby irrevocably designates, constitutes and appoints Employer (and all persons designated by Employer in its sole and absolute discretion) as Employee's true and lawful attorney-in-fact, and authorizes Employer and any of Employer's designees, in Employee's or Employer's name, to take any action and execute any instrument which Employer may deem necessary or advisable to accomplish the purposes of this paragraph.  Employee hereby ratifies all that such attorney shall lawfully do or cause to be done by virtue hereof.  This power of attorney is coupled with an interest.

8.     Enforcement.  If, at the time of enforcement of paragraph 6 or 7 of this Agreement, a court holds that the restrictions stated herein are unreasonable under circumstances then existing, the parties hereto agree that the maximum period, scope or geographical area reasonable under such circumstances shall be substituted for the stated period, scope or area and that the court shall be

1384555v3                                                  3

allowed to revise the restrictions contained herein in accordance therewith. Because Employee's services are unique and because Employee has access to Confidential Information and Work Product, the parties hereto agree that money damages would be an inadequate remedy for any breach of paragraph 6 or 7 of this Agreement. Therefore, in the event a breach or threatened breach of paragraph 6 or 7 of this Agreement, the Employer or its successors or assigns may, in addition to other rights and remedies existing in their favor, apply to any court of competent jurisdiction for specific performance and/or injunctive or other relief in order to enforce, or prevent any violations of, the provisions hereof (without posting a bond or other security).

9.    Representations.  Employee hereby represents and warrants that the execution, delivery and performance of this Agreement by Employee does not and will not conflict with, breach, violate or cause a default under any contract, agreement, instrument, order, judgment or decree to which Employee is a party or by which he is bound, including any existing employment or non-competition agreement.  Employee acknowledges that he has had the opportunity to consult with legal counsel regarding the terms of this Agreement.

10.    Definitions.

"Affiliate" means, with respect to any Person, any other Person directly or indirectly controlling, controlled by, or under direct or indirect common control with such Person.  A Person shall be deemed to control another Person if such first Person possesses, directly or indirectly, the power to direct or cause the direction of the management and policies of such other Person, whether through ownership of voting securities, by contract or otherwise.

"Person" means an individual or a corporation, partnership, limited liability company, trust, incorporated or unincorporated association, joint venture, joint stock company, government (or any agency or political subdivision thereof) or other entity of any kind.

11.    Notices.  Any notice provided for in this Agreement must be in writing and must be either personally delivered, sent by reputable overnight courier service (charges prepaid), sent by facsimile (receipt confirmed) or mailed by certified mail (postage prepaid and return receipt requested) to the recipient at the address below indicated:

To Employer:

> TDF Corporation
> Rock Island Arsenal, Building 131
> PO Box 5164
> Rock Island, Illinois 61204
> Fax: (309) 283-0285
> Attn: Chief Executive Officer
> To Employee:

1384555v3                                            4

DeWayne Egly
1281 Masters Rd.
Lake Geneva, WI 53147
Email: degly@wi.rr.com

or to such other address or to the attention of such other person as the recipient party shall have specified by prior written notice to the sending party. Any notice under this Agreement will be deemed to have been given when delivered personally or by overnight courier, when sent by facsimile, or if mailed, five days after deposit in the U.S. Mail.

12.    Miscellaneous Provisions.

(a)    Severability.  Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under any applicable law or rule in any jurisdiction, such invalidity, illegality or unenforceability will not affect any other provision or any other jurisdiction, but this Agreement will be reformed, construed and enforced in such jurisdiction as if such invalid, illegal or unenforceable provision had never been contained herein.

(b)    Complete Agreement.  This Agreement, those documents expressly referred to herein and other documents of even date herewith embody the complete agreement and understanding among the parties and supersede and preempt any prior understandings, agreements or representations by or among the parties, written or oral, which may have related to the subject matter hereof in any way.

(c)    Successors and Assigns.  Except as otherwise provided herein, this Agreement shall bind and inure to the benefit of and be enforceable by Employee and the Employer and their permitted successors and assigns; provided that the rights and obligations of Employee under this Agreement shall not be assignable without the prior written consent of the Employer.

(e)    Choice of Law.  All questions concerning the construction, validity and interpretation of this Agreement and any exhibits hereto will be governed by the internal law, and not the law of conflicts, of the State of Illinois.

(f)    Remedies.  Each of the parties to this Agreement will be entitled to enforce its rights under this Agreement specifically, to recover damages and costs (including reasonable attorney's fees) caused by any breach of any provision of this Agreement and to exercise all other rights existing in its favor. The parties hereto agree and acknowledge that money damages may not be an adequate remedy for any breach of the provisions of his Agreement and that any party may in its sole discretion apply to any court of law or equity of competent jurisdiction for specific performance

and/or other injunctive relief in order to enforce or prevent any violations of the provisions of this Agreement.

(g)    Amendment and Waiver.  The provisions of this Agreement may be amended and waived only with the prior written consent of the Employer and the Employee.

IN WITNESS WHEREOF, the parties hereto have executed this Employment Agreement on the date first written above.

TDF CORPORATION

By:_____

Its: _____


EMPLOYEE:

_____
DeWayne Egly